UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEORA RILEY, et al., )
*Individually and on behalf of all others* )
*similarly situated,* )
)
                            Plaintiffs, )
)
v. )      Case No. 18-cv-2337-KHV-TJJ
)
PK MANAGEMENT, LLC, et al., )
)
                          Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No. 126). Plaintiffs seek an order compelling Defendants Aspen Companies Management, LLC (Aspen) and Central Park Holdings, LLC (Holdings) to produce documents responsive to Plaintiffs' Second Document Requests Nos. 52, 60, and 64, and to answer Interrogatory Nos. 15, 16, 18, and 19 of Plaintiffs' Second Interrogatories. Aspen and Holdings jointly oppose the motion. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

### I. Requested Discovery

Plaintiffs served their Second Document Requests and Second Interrogatories on Defendants Aspen and Holdings on December 7, 2018. In RFP No. 52 directed to Holdings, Plaintiffs sought a copy of Holdings' LLC operating agreement. In identical requests to Aspen and Holdings, Plaintiffs asked in RFP No. 60 for a copy of all premises inventories Aspen and Holdings had conducted on or after January 1, 2008. And in RFP No. 64, Plaintiffs asked both Aspen and Holdings to produce all Housing Assistance Payments (HAP) contracts between each of them and the U.S. Department of Housing and Urban Development (HUD) for Central Park Towers, and/or between each of them and Plaintiffs Ozburn or Riley.

Although Holdings produced its operating agreement in response to RFP No. 52, it redacted the names of its members pursuant to objection that their identities are irrelevant. In response to RFP No. 60, Defendants objected on the basis that the request is overbroad and beyond the scope of permissible discovery, with the latter referring to their position that discovery is bifurcated.[1] Defendants objected to RFP No. 64 on the grounds it is overly broad, beyond the scope of limited discovery (again referring to its bifurcation argument), and that producing contracts for non-party tenants would disclose financial arrangements with them.

Interrogatory Nos. 15 and 16 seek, among other things, the compensation or salary for each of Aspen's and Holdings' employees, members, agents, owners, managers, and representatives who visited Central Park Towers for any reason during the class period,[2] and who worked at Central Park Towers on a regular basis on or after January 1, 2008. Interrogatory No. 18 asked each Defendant to state the monthly rent it charged for each apartment unit during the class period, and Interrogatory No. 19 sought the total amount of rent it received from class members for calendar years 2013 to the present.

Defendants objected to many subparagraphs of Interrogatory Nos. 15 and 16, but the only remaining subparagraphs at issue are those calling for salary or compensation. Defendants objected that the inquiry improperly seeks personnel information which is currently beyond the scope of discovery at this stage (the bifurcation argument), invades the individuals' privacy rights, and could lead to embarrassment or annoyance. With respect to Interrogatory Nos. 18 and

---

[1] The Court rejected Defendants' position in its Memorandum and Order dated February 8, 2019 (ECF No. 111), and denied all Defendants' motions to bifurcate (ECF No. 162).

[2] Plaintiffs define the class period as January 26, 2013 to present. First Amended Class Action Petition for Damages (ECF No. 1-1) ¶81.

19, Defendants objected they are overbroad as to time and call for speculation because they call for information before Defendants owned the property,[3] unduly burdensome, and premature.

Plaintiffs conferred with Defendants, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan 37.2, and Plaintiffs have timely filed this motion.

## II.     Legal Standard

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.  As amended in 2015, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[4]

Considerations of both relevance and proportionality now govern the scope of discovery.[5] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[6] Information still "need not be admissible in evidence to be discoverable."[7]  The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase,

---

[3] Both Defendants raise this objection, even though it is the Court's understanding that Holdings owns the property and Aspen serves as property manager.

[4] Fed. R. Civ. P. 26(b)(1).

[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[6] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[7] Fed. R. Civ. P. 26(b)(1).

3

however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[8]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[9] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[10] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13]

**III.     Analysis**

---

[8] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[9] *Id.*

[10] *Id.*

[11] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[12] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[13] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

The Court considers in turn each of Plaintiffs' challenges to Defendants' timely-asserted objections.

### A.     RFP No. 52

Although Holdings produced a copy of its current LLC operating agreement as Plaintiffs requested in RFP No. 52, it redacted the names of the LLC's members. Its members apparently include both LLCs and individuals whose identities Holdings consider irrelevant because they "are not parties to this litigation, have not had any interaction with this case other than through their connection to [Holdings], and are not covered by the protective order in this case."[14] Holdings offers no legal or factual support for its assertion. The Court finds the identity of a party whose business structure includes members, each of whom presumably has the right to transact business with the LLC[15] and the obligation to fulfill its required contribution to the LLC,[16] is relevant information. An unsupported assertion denying or at least minimizing the members' interaction with this case is insufficient to challenge facial relevancy. Holdings has failed to meet its burden to demonstrate the request seeks irrelevant information, or that disclosure may cause harm that outweighs the presumption. The Court grants Plaintiffs' motion with respect to RFP No. 52.

### B.     RFP No. 60

---

[14] ECF No. 137 at 3.

[15] *See* Kan. Stat. Ann. § 17-7669 (unless prohibited by operating agreement, members "may lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume one or more obligations of, provide collateral for, and transact other business with" LLC). Holdings does not argue that its operating agreement contains any such prohibition.

[16] *See* Kan. Stat. Ann. § 17-76,100 (setting forth member's liability for contribution).

In their response, Defendants do not so much explain their objection as they complain that the documents they have already produced required a labor-intensive review (without an affidavit describing the efforts), and assert they have already produced all the documents Plaintiffs claim they need for their experts. The request asks Defendants to provide copies of all premises inspections and inventories conducted pursuant to an applicable Kansas statute for any unit in Central Park Towers from January 1, 2008 to present.

The cited statute requires the landlord and tenant to conduct an inventory within five days of the date of occupancy. The inventory is to include a written record detailing the condition of the premises, be signed by both the landlord and tenant, and the tenant is to receive a copy.[17] While Plaintiffs acknowledge that Defendants have produced some inspection reports in response to earlier RFPs seeking notices and communications to tenants about pests, they also show an inspection report that was not provided to one of the named Plaintiffs to demonstrate that Defendants possess inspection reports never shown to tenants. Plaintiffs explain the relevance of the reports as two-fold: it is necessary for their experts to construct a model to show the spread of infestations throughout the building, and to show common evidence in their class certification motion. The Court finds the request is facially relevant. Defendants fail to demonstrate how the request is overbroad, and the Court grants Plaintiffs' motion with respect to RFP No. 60.

### C. RFP No. 64

Plaintiffs ask Defendants to provide copies of all Housing Assistance Payments Contracts (HAP Contracts) between Aspen/Holdings and the Department of Housing and Urban

---

[17] Kan. Stat. Ann. § 588-2548.

Development (HUD) and/or between Aspen/Holdings and Terri Ozburn or Leora Riley. Defendants object to producing information about non-party tenants and argue that Plaintiffs impermissibly seek information on the amount Central Park Holdings is subsidized by HUD. Defendants do not explain the basis of their argument that the information is "not ripe for discovery at any stage."[18] Neither does any party explain what an HAP Contract is, although Plaintiffs assert that to the extent the Contracts set forth the amount of rent owed by HUD in contrast to that rent owed by the putative class members, it is relevant to damages. In addition, Plaintiffs contend that to the extent the Contracts may also set forth obligations imposed on Defendants, that information is also relevant to maintenance of the premises.

"The HAP contract is a written agreement between the PHA [Public Housing Authority] and the owner of a unit occupied by a housing choice voucher program participant. . . . Under the HAP contract, the PHA agrees to make housing assistance payments to the owner on behalf of a specific family leasing a specific unit."[19] There are numerous requirements concerning the contents of the contract, payments, owner responsibilities and breaches, record-keeping requirements, and more. The HAP contract is entered into between the landlord and the PHA at the same time the family and the landlord sign a lease for the housing unit; the contract and the lease are coterminous. "That means that everyone—tenant, landlord and PHA—has obligations and responsibilities under the voucher program."[20]

---

[18] ECF No. 137 at 5.

[19] Department of Housing and Urban Development, Housing Assistance Payments (HAP) Contracts Chapter 11.1 (www.hud.gov/site/documents/DOC_35621.PDF).

[20] Department of Housing and Urban Development, Housing Choice Vouchers Fact Sheet (www.hud.gov/topics/housing_choice_voucher_program_section_8).

7

The Court finds the HAP Contracts are facially relevant,[21] and Defendants offer no support for their objection that the request is overly broad. While the request will require Defendants to produce contracts for non-parties, the Court finds them relevant for the reasons Plaintiffs assert. For the protection of the non-parties, the Court will require Plaintiffs' counsel to provide Defendants with the names of putative class members they represent. Before producing the documents, Defendants shall redact the names of all housing choice voucher program participants who are not current clients of Plaintiffs' counsel. And as such, the Court grants Plaintiffs' motion with respect to RFP No. 64.

### D.   Interrogatory Nos. 15 and 16

The Court has ruled this issue, which Plaintiffs agree is identical to that raised in their Motion to Compel Discovery with respect to PK Management, LLC.[22] For the reasons stated in the Court's Memorandum and Opinion dated April 5, 2019,[23] the Court denies Plaintiffs' motion with respect to Interrogatory Nos. 15 and 16.

### E.   Interrogatory Nos. 18 and 19

Putting aside Defendants' objections related to bifurcation which the Court has rejected, the only objection they mention in their response is the amount of rent charged each tenant "has no relevance to any class certification factors, and fails to even relate to any form of recoverable damages."[24] In these two interrogatories, Plaintiffs seek the monthly rent Defendants charged

---

[21] Although the request portrays the HAP contracts as between HUD and Aspen/Holdings, it appears the parties to the contract are the local Public Housing Authority and Aspen/Holdings. Defendants made no objection on this basis and the Court's order is directed to HAP contracts to which Aspen/Holdings is a signatory.

[22] ECF No. 123.

[23] ECF No. 164.

[24] ECF No. 137 at 8.

per unit during the class period, as well as the total amount of rent Defendants collected from putative class members in each year from 2013 to present. The Court agrees with Plaintiffs' assertion that the requested information is relevant to damages, and Defendants have made no supported argument to the contrary. Accordingly, the Court grants Plaintiffs' motion with respect to Interrogatory Nos. 18 and 19.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Discovery (ECF No. 12) is **GRANTED** with respect to RFP Nos. 52, 60, and 64 (with production to occur as directed herein), and Interrogatory Nos. 18 and 19. Plaintiffs' Motion is **DENIED** with respect to Interrogatory Nos. 15 and 16.

**IT IS SO ORDERED.**

Dated this 8th day of April, 2019.

                                                        Teresa J. James
                                                       U. S. Magistrate Judge