**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LEORA RILEY, et al., )<br>*Individually and on behalf of all others* )<br>*similarly situated,* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PK MANAGEMENT, LLC, et al., )<br>)<br>Defendants. ) | Case No. 18-cv-2337-KHV-TJJ |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Sanctions filed by Defendant Aspen Companies Management, LLC (ECF No. 212). Aspen seeks an order disqualifying Plaintiffs' counsel because of an alleged violation of Kansas Rule of Professional Conduct 4.2. Plaintiffs oppose the motion.[1] Upon consideration of the matter, the Court finds the motion should be denied.

**Background**

This case began in January 2018 when Central Park Towers filed three limited action unlawful detainer lawsuits in the District Court of Wyandotte County, Kansas against Leora Riley, Terri Ozburn, and Carolyn Bell, respectively. In each of the landlord-tenant actions, Central Park Towers sought possession of the premises and past-due rent. On April 3, 2018, Leora Riley, Terri Ozburn, and Carolyn Bell filed (1) their answers to Central Park Towers' petitions, (2) counterclaims against Central Park Towers, and (3) third-party claims against PK Management, LLC. On April 13, 2018, Plaintiff Central Park Towers dismissed these three

---

[1] No other Defendant joined in the motion, and none filed a response.

Wyandotte County lawsuits without prejudice. On May 3, 2018, counterclaim plaintiffs/third-party plaintiffs Leora Riley, Terri Ozburn, and Carolyn Bell dismissed their counterclaims against Central Park Towers without prejudice.[2]

Following dismissal of the actions for possession and past-due rent, Plaintiffs sought and obtained permission to realign the parties to their current configuration. On June 6, 2018, Plaintiffs filed their First Amended Class Action Petition in the District Court of Wyandotte County, Kansas.[3] Defendant PK Management, LLC timely filed a notice of removal.[4]

Plaintiffs' First Amended Class Action Petition includes seven counts. And because Plaintiffs filed this case in state court, the original pleading does not use the language of Federal Rule of Civil Procedure 23(b) to describe the types of class actions it asserts.[5] In their Second Amended Class Action Complaint, filed July 15, 2019, Plaintiffs (1) conform their pleading to reflect the language of Rule 23(b) regarding the types of class actions they assert, and add a "limited fund class" under Rule 23(b)(1)(B); (2) add factual allegations learned in discovery; (3) add a count alleging negligence against all Defendants; and (4) seek punitive damages in the counts alleging violations of an implied warranty of habitability (Count Two), breach of statutory duty to materially comply with lease and to provide habitable housing (Count Three), nuisance (Count Seven), and negligence (Count Eight).[6]

---

[2] Notice of Removal (ECF No. 1) at 2.

[3] ECF No. 1-1 at 127-210.

[4] ECF No. 1.

[5] *See* Fed. R. Civ. P. 23(b) ("Types of Class Actions").

[6] Second Amended Class Action Complaint (ECF No. 204).

The parties have been actively conducting discovery and the Court has ruled on several discovery and other pretrial motions. However, this is the first mention of the issue raised in the instant motion. On September 19, 2018, Aspen's[7] Social Services Coordinator Keirei Broadus telephoned Bell Law, LLC.[8] Ms. Broadus indicated she was seeking representation and specifically asked to join this lawsuit. Janis Bell, the law firm employee who answered the call, recognized Ms. Broadus's name. After the conversation ended, Ms. Bell told Brandon Bell of the call.[9] He determined he could not represent Ms. Broadus and based on the information she had provided, he thought it likely that Ms. Broadus's interests were likely adverse to Aspen's.[10] Mr. Bell directed Ms. Bell to call Ms. Broadus and ask if she was represented by counsel. If not, Ms. Bell was to refer Ms. Broadus to Christopher Dandurand of the Gorny Law Firm.[11] Ms. Bell telephoned Ms. Broadus on September 20, 2018, learned she was not represented, and provided her with contact information for Mr. Dandurand. Ms. Bell has not communicated with Ms. Broadus since then.[12]

Ms. Broadus did contact Mr. Dandurand, asking him to represent her with respect to potential claims against Aspen, including claims arising from mold and work environment issues

---

[7] Aspen is the current property manager of Central Park Towers.

[8] Plaintiffs are represented by Bryce Bell and Mark Schmitz, both of Bell Law, LLC; Gina Chiala of the Heartland Center for Jobs and Freedom, Inc.; Jeffrey M. Lipman of Lipman Law Firm, PC; and Zachary Poole of ZDP Law, LLC. Although Aspen seeks removal of all Plaintiffs' counsel, the motion makes no allegations against any attorney other than Bryce Bell.

[9] Declaration of Janis Bell (ECF No. 228-1).

[10] Declaration of Bryce B. Bell (ECF No. 228-3).

[11] Id.

[12] ECF No. 228-1.

at Central Park Towers.  Mr. Dandurand agreed to represent her, with the scope of his representation to include both the potential claims just described and in this case if she is asked to sit for deposition.[13]  Sometime later in September or in October, 2018, Mr. Dandurand contacted Mr. Bell as a standard referral follow-up to advise Mr. Bell of his representation of Ms. Broadus.[14]

Eight or nine months later, Mr. Bell asked Mr. Dandurand if he could meet with Ms. Broadus and Mr. Dandurand.  Mr. Dandurand obtained Ms. Broadus's consent and arranged a meeting for the three of them in his office on July 10, 2019.  Mr. Dandurand was present the entire time.  Ms. Broadus confirmed that Mr. Dandurand is her attorney, and she gave no indication that any other attorney (including counsel for Aspen) is representing or has represented her.  Mr. Bell identified himself as counsel for Plaintiffs Leora Riley and Terri Ozburn.[15]  Mr. Bell did not ask for nor has Ms. Broadus provided any documents, including an affidavit.[16]

Aspen's counsel learned of the meeting, and on July 15, 2019, Aspen attorney Jeffrey Bullins contacted Mr. Dandurand.  Mr. Bullins stated that he represents Ms. Broadus, which surprised Mr. Dandurand, who in turn stated that he represents her.[17]  Although Mr. Bullins conceded he had no written agreement with Ms. Broadus, he was referring to a meeting his

---

[13] Declaration of Christopher Dandurand (ECF No. 228-2).

[14] *Id.*

[15] Carolyn Bell is no longer a Plaintiff.  *See* Stipulation of Partial Dismissal Without Prejudice (ECF No. 58).

[16] ECF No. 228-3.

[17] *See* email from Chris Dandurand to Jeffrey Bullins (ECF No. 228-2 at 6).

associate Phil Raine had with Ms. Broadus in which he informed her that he and Mr. Bullins represent Aspen and all of its employees, including Ms. Broadus, in this lawsuit.[18]  During that meeting, Ms. Broadus did not tell Mr. Raine that Mr. Dandurand represents her, which may be because the meeting occurred before she engaged Mr. Dandurand.  Nor did Ms. Broadus tell Messrs. Bullins or Raine that she had counsel at any time after the meeting.  After speaking with Mr. Dandurand, Mr. Bullins accepted Mr. Dandurand's confirmation that "Ms. Broadus has chosen to terminate my firm's representation of her in this matter."[19]  Mr. Dandurand offered to make Ms. Broadus available for deposition, but to date no party has sought to depose her.

## Legal Standard

Although Aspen styles its motion as one for sanctions, its sole focus is to seek disqualification of counsel.[20]  The Court has the power to disqualify counsel at its discretion for ethical violations, using the following standard:

> The Court must determine a motion to disqualify counsel by measuring the facts of the particular case. *Beck v. Board of Regents of State of Kan.,* 568 F. Supp. 1107,

---

[18] *See* email from Jeffrey Bullins to Chris Dandurand (ECF No. 228-2) at 5.  The date of Mr. Raines's meeting with Ms. Broadus is unknown, but according to this email it was "several months" before July 15.

[19] *Id.*

[20] In addition to seeking an order disqualifying all of Plaintiffs' counsel, Aspen's motion also seeks the following relief: (1) an order to immediately cease and desist Plaintiffs' counsel's *ex parte* contacts with Ms. Broadus; (2) an order for Plaintiffs' counsel to produce to counsel for Aspen a list of any other Aspen employees contacted by them since the initiation of this litigation, a detailed summary of all such communications, and all statements and affidavits obtained from such Aspen employees; (3) an order that all evidence from any improper *ex parte* contacts by Plaintiffs' counsel be excluded from evidence in this case; (4) an order preventing Plaintiffs' counsel from disclosing any information gained through any *ex parte* contacts to any individual or party; and (5) an award of costs and fees for the motion.  ECF No. 212 at 1-2.  In its briefing and during oral argument, Aspen advanced no argument in favor of these other forms of relief.  The Court finds Aspen has not met its burden to show it is entitled to any of these additional sanctions.

5

1110 (D. Kan. 1983). The moving party must show proof that is more than mere speculation and sustains a reasonable inference of a violation. *Koch,* 798 F. Supp. at 1530–31. The essential issue is whether the alleged misconduct taints the lawsuit. *Id.* The Court should not disqualify unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." *Field v. Freedman,* 527 F. Supp. 935, 940 (D. Kan. 1981). Because the interests to be protected are critical to the judicial system, the Court should resolve doubts in favor of disqualification. *Id.* The Court must balance several factors, however, including society's interest in ethical conduct, defendants' right to choose their counsel, and the hardship which disqualification would impose on the parties and the entire judicial process. *Lansing–Delaware Water Dist. v. Oak Lane Park, Inc.,* 248 Kan. 563, 571, 808 P.2d 1369, 1375 (1991).[21]

As Judge Vratil noted, because disqualification affects more than the attorney in question, "the Court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question."[22]

## Analysis

Aspen contends that Mr. Bell violated Rule 4.2 of the Kansas Rules of Professional Conduct by engaging in *ex parte* communications with Mr. Broadus. Rule 4.2 states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.[23]

Aspen asserts that Mr. Bell communicated with Ms. Broadus about the subject of the representation, and Plaintiffs do not argue otherwise. With respect to whether Mr. Bell knew Ms. Broadus was represented by another lawyer in the matter, Aspen contends the issue is

---

[21] Biocore Med. Techs., Inc. v. Khosrowshahi, 181 F.R.D. 660, 664 (D. Kan. 1998).

[22] *Id.* (citing *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530 (D. Kan. 1992).

[23] Kan. S. Ct. Rule 226 at Rule 4.2.  This court has adopted the Kansas Rules of Professional Conduct as the applicable standard of professional conduct.  *See* D. Kan. Rule 83.6.1(a).

6

irrelevant because Ms. Broadus is a constituent of Aspen as described in Comment 7 to the rule.

Comment 7 addresses communications with an organization, and it states as follows:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.[24]

### *September 2018 Telephone Calls*

Aspen asserts that Ms. Broadus is a constituent of Aspen who "has authority to obligate the organization with respect to the matter" and "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Aspen frames the issue as whether Plaintiffs' counsel knew on September 19 and 20, 2018 that Ms. Broadus was a constituent of Aspen with whom communications were prohibited, not whether Plaintiffs' counsel knew whether Ms. Broadus was represented by her own counsel. Plaintiffs addressed this issue at the hearing, noting that the Scheduling Conference was held on September 7, 2018.[25] Aspen's Rule 26(a)(1)(A) disclosures listed Margaret Mejia and Naftali Levenbrown as individuals likely to have discoverable information, along with unnamed

---

[24] Kan. S. Ct. Rule 226 at Rule 4.2 cmt. 7. This court has held that Comment 7 "is consistent with [Rule 4.2] to the extent the comment explains which people involved with an organizational party constitute 'parties' for purposes of the rule." *Holdren v. General Motors Corp.*, 13 F. Supp. 2d 1192, 1194 (D. Kan. 1998).

[25] *See* ECF No. 37.

representatives of three pest control and exterminating businesses.[26]  The case record indicates the first discovery requests to a party were served on September 21, 2018, so no discovery responses had been produced as of September 19.[27]  Plaintiffs submitted a copy of Aspen's answers to Plaintiffs' First Interrogatories served in October 2018, but neither do those answers mention Ms. Broadus.

Aspen points to certain allegations in Plaintiffs' First Amended Complaint, statements by Plaintiff Riley in her deposition, and excerpts from Plaintiffs' expert report as evidence that Ms. Broadus's acts or omissions can be imputed to Aspen.[28]  Of those items, only one—Plaintiffs' First Amended Complaint—is dated earlier than September 2018.

Recalling that this case began when Central Park filed eviction actions against the original named Plaintiffs provides the context for allegations in the First Amended Complaint that the evictions were in retaliation for Plaintiff Ozburn's complaints about habitability and safety issues at the Complex, including bedbugs, cockroaches, mice, mold, and defective elevators.[29]  The First Amended Petition does not include a claim for retaliatory eviction. Instead, in the factual allegations, Plaintiffs describe a tenant meeting Ms. Ozburn was conducting on November 30, 2017, during which Ms. Broadus allegedly interrupted, called her a derogatory name, and said she could and would have her evicted.  The First Amended Complaint contends Ms. Ozburn received an eviction notice within an hour of Ms. Broadus's comments.

---

[26] *See* Defendants Aspen Companies Management, LLC and Central Park Holdings, LLC's Rule 26 Disclosures (maintained in Chambers files).

[27] *See* ECF No. 41.

[28] *See* ECF No. 213 at 6.

[29] ECF No. 1-1 ¶¶ 58-80.

But the First Amended Complaint contains no count for retaliatory eviction of Ms. Ozburn or any other Plaintiff.[30]

In addition, the First Amended Complaint says nothing about Ms. Broadus's authority or responsibility to correct any of the habitability issues about which Plaintiffs complain. To the contrary, in a December 1, 2017 letter from Ms. Broadus to Ms. Ozburn that Aspen appends to its motion, Ms. Broadus offered housing resources because "[a]s the Social Service Coordinator for Central Park Towers, it has been brought to my attention that you may be in need of services."[31] The Court therefore finds that the First Amended Complaint provides no evidence that Plaintiffs knew that Ms. Broadus is a constituent of Aspen for purposes of Rule 4.2.[32]

Aspen next points to statements Ms. Riley made in her May 2019 deposition expressing her opinion that Ms. Broadus is a racist, treats black and white tenants differently, and inconsistently applies property rules that lead to lease violation notices.[33] Accepting Ms. Riley's opinions as factually accurate for the sake of this motion, they do not support a finding that Ms.

---

[30] The Court notes that the allegations concerning Ms. Broadus's comments to Ms. Ozburn and the eviction notice Ms. Ozburn received do not appear in Plaintiffs' operative Second Amended Complaint, thereby confirming that the issue of retaliatory eviction is not one Plaintiffs assert.

[31] ECF No. 213-2 at 84.

[32] In its reply brief, Aspen quotes a passage from Judge Waxse's opinion in *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271, 1287 (D.Kan. 2001) in which he found that counsel "knew, or at the very least, should have known," that the employee in question had managerial responsibilities that rendered him off-limits. Aspen then argues that as of September 20, 2018, Mr. Bell should have known that Ms. Broadus was a constituent of Aspen with authority to obligate it with respect to the subject matter of this litigation. *See* ECF No. 230 at 8-9. Rule 4.2 requires actual knowledge to establish a violation. Nevertheless, the Court also finds the First Amended Complaint contains no facts from which Mr. Bell should have known that Ms. Broadus is a constituent of Aspen for purposes of Rule 4.2.

[33] ECF No. 213-4.

Broadus is a constituent of Aspen for purposes of this lawsuit. Her actions, even if imputed to Aspen, would not subject Aspen to liability for the habitability allegations at issue. Nor do they convey Ms. Broadus's authority to obligate Aspen in any habitability-related issue.

Finally, Aspen contends that Plaintiffs allege a failure by social services with respect to pest control, which falls within Ms. Broadus's job responsibilities, and therefore the allegation is against Aspen and is intended to impute liability to Aspen. Aspen cites the May 17, 2019 report of Plaintiffs' pest management expert as the source of these allegations, but that report makes no such allegation. Instead, in a paragraph in which the witness describes common difficulties in obtaining tenant cooperation in the rigors of preparation for bed bug treatment, the witness writes: "While there was some brief mention in the record of referring tenants to social services to assist with sanitation and cleanup *(Rhine Depo. 68-69; 1-14; 2-14)*, it's unclear how often this was done, particularly in respect to prepping for bed bug service."[34] The statement is nonjudgmental and makes no allegation of a failure of responsibility by Ms. Broadus. Accordingly, the Court finds the report does not support a conclusion that Mr. Bell knew in September 2018 that Ms. Broadus is a constituent of Aspen for purposes of Rule 4.2.

The Court makes one additional observation about the state of Mr. Bell's knowledge in September 2018. While Comment 7 provides guidance for the Court's analysis of the *ex parte* contacts in this case, the Court rejects Aspen's assertion that the Comment renders irrelevant the issue of whether Ms. Broadus was represented by counsel in September 2018. When Ms. Bell asked, Ms. Broadus denied having representation. Even if Ms. Broadus had met with Mr. Raine before she attempted to contact Mr. Bell, as of September 19 she did not agree that Mr. Raine or

---

[34] Expert Report of Michael F. Potter, Ph.D. (ECF No. 213-5) ¶12.

10

any other Aspen counsel was serving as her lawyer. She called Mr. Bell's office seeking representation because she wanted to join in a lawsuit against her employer and others concerning conditions at Central Park Towers, where she works. That put her in a position adverse to Aspen, which is inconsistent with her agreeing to be represented by Aspen's counsel. Aspen agrees for the sake of this motion that "Ms. Broadus was not personally represented by any attorney during these two phone calls."[35]

Having concluded that as of September 19 or 20, 2018, Ms. Broadus did not consider herself to be represented and Mr. Bell did not know that Ms. Broadus is a constituent of Aspen for purposes of Rule 4.2, the Court finds no violation of Rule 4.2 occurred.[36]

### *July 2019 Meeting*

Aspen does not separately address Mr. Bell's meeting with Ms. Broadus and Mr. Dandurand. Plaintiffs assert no violation occurred in that meeting because it was arranged through Ms. Broadus's counsel with her consent, and her counsel also consented to and was present for the meeting. According to Plaintiffs, Comment 7 specifically contemplates and makes permissible the meeting Mr. Bell requested through the following language: "If a

---

[35] ECF No. 230 at 2.

[36] Because the Court has concluded that no violation occurred, it is unnecessary to address the referral to Mr. Dandurand in the September 20 conversation between Ms. Bell and Ms. Broadus. Although Aspen refers to it as a "bad faith referral," ECF No. 230 at 7, 8, the record does not support that characterization. As Mr. Bell explained, he was immediately aware that Ms. Broadus could not be a putative class member because the class definition excludes employees of Defendants. *See* ECF No. 204 ¶150. When he learned that Ms. Broadus potentially had her own claims against Aspen, he directed Ms. Bell to refer Ms. Broadus to an attorney who could represent her in her claims against Aspen. The Court finds Mr. Bell did not act in bad faith. Moreover, the September conversations arguably were not about the subject of Mr. Bell's representation of Plaintiffs. But as with the referral, the Court need not decide this issue because the Court has concluded that no violation occurred.

11

constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule."[37] Thus, Plaintiffs argue, even if the Court found Ms. Broadus to be a constituent of Aspen, Mr. Bell did not violate Rule 4.2 because Mr. Dandurand consented to the communication. Neither side has provided Kansas law on this issue, but Plaintiffs cite a California Court of Appeals case which held that *ex parte* contacts with current directors were permissible because the directors retained their own counsel who consented to the communications.[38]

Plaintiffs urge the Court to adopt the following rationale:

> When an employee has private counsel, that attorney is better able than the organization's attorney to determine whether the employee's interests are better served by speaking with another attorney or by silence. If the employee's private attorney determines that the employee's best interests dictate that her client speak with another attorney, that private attorney need not obtain the blessing of the organization's attorney before pursuing that course.[39]

The Court finds this reasoning persuasive and not inconsistent with Kansas law. The leading case in this district on the issue of whether counsel violates Rule 4.2 by having *ex parte* communications with another party's employee is *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271 (D. Kan. 2001). In *Hammond*, a putative class action alleging class-wide employment discrimination, Mr. Hope, the City's Director of Human Relations, attempted to contact plaintiffs' counsel Brown. Mr. Brown did not initially return the call because he knew Mr. Hope worked in the City's Human Resources Department and he could not determine

---

[37] Kan. S. Ct. Rule 226 at Rule 4.2 cmt. 7.

[38] *La Jolla Cove Motel & Hotel Apts., Inc. v. Superior Court*, 121 Cal. App. 4th 773 (Cal. App. 2004). *See also Edwards v. Mass. Bay Transp. Auth.*, No. 99-0458-F, 2000 WL 1786326 (Mass. Superior Ct. Dec. 7, 2000) (interview of defendant's employee, who had retained her own counsel, without notice to defendant not sanctionable).

[39] *Edwards*, 2000 WL 1786326 at *7.

whether Mr. Hope was a managerial employee.  Mr. Hope called again and asked Mr. Brown if he would represent him in a race discrimination case he wanted to bring against the City.  Mr. Brown explained his representation of the named plaintiff in the existing case and said if the case became certified as a class action, Mr. Hope might be a member of the class. The two discussed options and Mr. Hope professed his awareness of the potential conflict of interest.

After hearing Mr. Hope's explanation of his job responsibilities and his reporting and supervisory chain, Mr. Brown concluded Mr. Hope did not have managerial responsibilities on behalf of the City, and that he was not an employee within the scope of the "managing-speaking agent" test.[40]   When they met in person, it became clear to Mr. Brown that Mr. Hope was seeking representation as an individual and as a potential class representative.  Mr. Brown accepted the representation, and in a telephone voicemail message advised defense counsel he had been retained to assert Mr. Hope's claims of individual discrimination and was also considering him as an additional class representative.  Defense counsel objected to Mr. Hope being named a class representative.

In subsequent meetings with Mr. Hope, Mr. Brown learned that Mr. Hope had been actively involved in preparing the City's discovery responses in the putative class action, and Mr. Hope also told him of some alleged document shredding by City employees.

---

[40] 167 F. Supp. 2d at 1283-84.  "An employee has 'speaking authority' if the employee could bind the organization in a legal evidentiary sense. . . .  [The] inquiry is twofold: (1) does the employee have managerial authority over at least some of the issues in the underlying litigation; and (2) did the employee make a statement, during the existence of the employment relationship, concerning a matter within the scope of the employment." *Id.* at 1284 (internal citations omitted).  Aspen argues that Ms. Broadus has speaking authority.  But because the Court concludes that Aspen has not demonstrated her managerial authority, the Court need not consider whether she has speaking authority.

The City moved for a protective order to prevent additional *ex parte* contacts and sought to disqualify Mr. Brown from further representation in the putative class action. Magistrate Judge Waxse conducted a hearing and issued a memorandum and order, holding that Mr. Hope both had managerial responsibilities and "speaking authority" to bind the City. The list of his responsibilities is lengthy and includes the authority to make hiring decisions for the Human Resources Department, managing that Department, sitting on various hiring panels and making hiring recommendations to various City hiring authorities, investigating internal discrimination and harassment complaints brought by City employees, and more. Mr. Hope had also made statements during his employment with the City concerning matters within the scope of his employment. Finally, Mr. Hope had discussed with Mr. Brown allegations of discrimination involving minority employees who worked for the City, alleged shredding of documents, and the City's document production. Based on these findings, Judge Waxse concluded that Mr. Brown had violated Rule 4.2 and ordered him disqualified from the case.

The facts of this case are far different from those in *Hammond*. Not only did the witness have multiple managerial responsibilities over the precise issues for which his employer faced possible liability, but the same lawyer represented both the putative class action plaintiffs and the witness. Here, Aspen has not demonstrated that Ms. Broadus was its constituent, and Mr. Bell does not represent Ms. Broadus. Knowing he was precluded from doing so, he referred her to another law firm. The Court finds under the specific circumstances here, Mr. Bell did not violate Rule 4.2 by meeting with Ms. Broadus and Mr. Dandurand on July 19, 2019.

The Court is troubled, however, by Mr. Bell's meeting with Ms. Broadus and Mr. Dandurand. This meeting is especially troubling given that the only attorney Mr. Bell suggested as a referral was Mr. Dandurand.. Even though the Court has found the July meeting was not a

14

violation of the Rules of Professional Conduct, the much better course would have been for Mr. Bell to arrange with Mr. Dandurand to take Ms. Broadus's deposition, at which counsel for all parties could be present and participate. Aspen's counsel agreed during the hearing that a deposition would likely have alleviated his concerns, or at least would have significantly reduced the impact. When the Court raised the issue with Mr. Bell, he stated that if he had to do it all over again, he would have done just that. Although he believed Ms. Broadus to be a non-managerial employee with her own attorney representing her in claims against Aspen, he acknowledges perhaps he should have deposed instead of interviewing her. The Court is satisfied that Mr. Bell understands the need to diligently adhere to his ethical obligations and the Rules of Professional Conduct in future dealings with witnesses.

**IT IS THEREFORE ORDERED** that the Motion for Sanctions filed by Defendant Aspen Companies Management, LLC (ECF No. 212) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 9th day of September, 2019 at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge