# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LEORA RILEY et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 18-2337-KHV |
| | ) | |
| PK MANAGEMENT, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Leora Riley and Terri Ozburn bring putative class action claims against PK Management, LLC, Central Park Investors, LLC, Aspen Companies Management, LLC and Central Park Holdings, LLC. See Second Amended Class Action Complaint (Doc. #204) filed July 15, 2019. Plaintiffs allege that defendants failed to prevent and remedy uninhabitable living conditions at Central Park Towers, an apartment building in Kansas City, Kansas. Specifically, plaintiffs claim (1) breach of the implied warranty of habitability; (2) breach of the statutory duty to materially comply with a lease agreement and provide habitable housing; (3) failure to provide essential services; (4) breach of contract; (5) unjust enrichment; (6) nuisance; and (7) negligence. Plaintiffs seek monetary damages and injunctive relief. This matter comes before the Court on Plaintiffs' Motion For Class Certification, Appointment Of Class Representatives And Appointment Of Class Counsel (Doc. #239) filed September 16, 2019. For reasons stated below, the Court overrules plaintiffs' motion.

## Factual Background

Plaintiffs are residents of Central Park Towers, a 195-unit apartment building in Kansas

City, Kansas which participates in the U.S. Department of Housing and Urban Development ("HUD") Section 8 program for low-income tenants. From January 26, 2013 until October 29, 2015, Central Park Investors and PK Management owned and managed Central Park Towers. On October 29, 2015, Central Park Investors sold Central Park Towers to Central Park Holdings. Central Park Holdings and Aspen Companies Management are the current owner and property manager, respectively. Second Amended Class Action Complaint (Doc. #204) at 7, 14.

Plaintiffs allege that defendants have maintained severely substandard housing conditions at Central Park Towers in violation of lease agreements and state and common law duties. These conditions include mold, water leaks and infestations of bed bugs, mice, cockroaches and other vermin and insects. Plaintiffs assert that throughout the relevant period, numerous inspections have confirmed the presence of bed bugs and cockroaches in at least some units and have found evidence of bed bugs in common areas. On or about February 6, 2019, a HUD inspection of Central Park Towers did not note the presence of bed bugs, but plaintiffs believe that this is because defendants concealed the problem or inspectors did not look for bed bugs.

Plaintiffs allege that defendants have been aware of these housing conditions for years but have failed to adequately address them. Specifically, plaintiffs assert that defendants' pest control measures have been grossly inadequate in that they rely on tenant complaints. At the same time, plaintiffs assert that tenants are afraid to complain about bed bugs because Aspen Management and Central Park Holdings will charge them $600.00 per bed bug treatment.

Named plaintiff Ozburn has lived in the apartment building for several years and asserts that she has complained to no avail about substandard living conditions. Specifically, as early as April 10, 2017, Ozburn wrote a letter in which she complained about bed bugs, cockroaches, mice, mold, defective elevators, unsafe conditions and rampant criminal activity at the apartment

complex. She asserts that the property manager did not respond to her letter.

Named plaintiff Riley has lived at Central Park Towers for nine years and has complained to management several times. She asserts that pest infestations have damaged or destroyed her property and that her requests for maintenance go unanswered for long periods. Specifically, Riley asserts that her air conditioner and heater have been out of service during inclement weather, that her apartment has flooded multiple times because of air conditioner leaks and that she has experienced other maintenance issues. Riley further asserts that trash piles up at the complex and that she and other residents often must clean the common areas.

Plaintiffs seek to certify the following class:

All persons who currently reside at Central Park Towers or formerly resided therein at any time from January 26, 2013 to the date this Class is Certified.

<u>Plaintiffs' Memorandum Of Law In Support Of Their Motion For Class Certification, Appointment Of Class Representatives And Appointment of Class Counsel</u> (Doc. #240) filed September 16, 2019 at 22. Plaintiffs ask the Court to appoint Riley and Ozburn as class representatives. Plaintiffs also ask the Court to appoint class counsel. <u>Id.</u> at 29-30.

**<u>Legal Standards</u>**

The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 348 (2011). The Court has considerable discretion in making class certification decisions. <u>See</u> <u>Tabor v. Hilti, Inc.</u>, 703 F.3d 1206, 1227-28 (10th Cir. 2013) (because class certification involves "intensely practical considerations," decision lies within discretion of trial court); <u>see also</u> <u>Bateman v. Am. Multi-Cinema, Inc.</u>, 623 F.3d 708, 712 (9th Cir. 2010) (district court in best position to consider most fair and efficient procedure for litigation). It must, however, conduct a "rigorous

analysis" to determine whether the putative class satisfies the requirements of Rule 23, Fed. R. Civ. P.  Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013); Dukes, 564 U.S. at 350-51; Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Rule 23 "does not set forth a mere pleading standard."  Dukes, 564 U.S. at 350.  Rather, the Court's analysis will frequently overlap with the merits of plaintiffs' claims.  See Comcast, 569 U.S. at 33-34; Dukes, 564 U.S. at 351.  This is so because determining whether to certify a class typically involves considerations that are enmeshed in the factual and legal issues which comprise plaintiffs' cause of action.  Comcast, 569 U.S. at 34.

As the parties seeking to certify a class, plaintiffs have the burden to prove that the class satisfies the requirements of Rule 23, Fed. R. Civ. P.  See Shook v. El Paso Cnty., 386 F.3d 963, 968 (10th Cir. 2004); D. Kan. Rule 23.1(d).  In doing so, plaintiffs must first satisfy the prerequisites of Rule 23(a), i.e. they must demonstrate that the class is so numerous that joinder of all members is impracticable; questions of law or fact are common to the class; the claims of the representative parties are typical of claims of the class; and the representative parties will fairly and adequately protect the interests of the class.  See Rule 23(a), Fed. R. Civ. P.  After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.  Here, plaintiffs seek to certify a class under Rule 23(b)(3).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id.

In addition, regardless whether the claim as a whole satisfies the Rule 23(b) predominance requirement, under Rule 23(c)(4)(A) the Court may certify a class on a designated issue if doing so would materially advance the litigation. In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 229 (2d Cir. 2006); In re Motor Fuel Temperature Sales Practices Litig., 279 F.R.D. 598, 609 (D. Kan. 2012). For the Court to certify an issue using Rule 23(c)(4), the proposed class must satisfy the requirements of Rules 23(a) and (b) only with respect to that issue. In re Motor Fuels, 279 F.R.D. at 609. As with any class certification, the Court must support certification of an issue class under Rule 23(c)(4) with rigorous analysis. See Dukes, 564 U.S. at 350-51.

## Analysis

As noted, plaintiffs request certification of the following class:

> All persons who currently reside at Central Park Towers or formerly resided therein at any time from January 26, 2013 to the date this Class is Certified.

Memorandum In Support Of Class Certification (Doc. #240) at 22. For reasons explained below, the Court finds that plaintiffs' proposed class does not satisfy the requirements of Rule 23, Fed. R. Civ. P.

## I. Plaintiff's Proposed Class Does Not Satisfy Rule 23(a) or (b)

### A. Rule 23(a)

To obtain class certification, plaintiffs must first show that their proposed class satisfies the requirements of Rule 23(a), i.e. that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a).

#### 1. Rule 23(a)(1): Numerosity

The numerosity requirement of Rule 23(a)(1) requires examination of the specific facts of each case and imposes no absolute limitations. Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980). To satisfy the requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978). The Court has no set formula for determining whether plaintiffs meet this requirement. Id. Here, plaintiffs' proposed class consists of at least 315 people and will likely be over 400. Memorandum In Support Of Class Certification (Doc. #240) at 24. Defendants do not dispute that plaintiffs' proposed class meets the numerosity requirement. On this record, the Court finds that plaintiffs' proposed class is sufficiently numerous.

#### 2. Rule 23(a)(2): Commonality

The commonality requirement of Rule 23(a)(2) requires plaintiffs to show that members of their proposed class have sustained the same injury by the same defendant. Dukes, 564 U.S. at 349-50; McCaster v. Darden Restaurants, Inc., 845 F.3d 794, 800 (7th Cir. 2017). It is not enough for plaintiffs to show that class members have suffered a violation of the same provision of law.

They must establish that "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 756 (7th Cir. 2014); Dukes, 564 U.S. at 350. In other words, the claims must depend upon a common contention which is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. The focus of the commonality requirement is not so much whether common questions exists, but whether a classwide proceeding will generate common *answers* which are apt to drive resolution of the dispute. Naylor Farms, Inc. v. Chaparral Energy, LLC, 923 F.3d 779, 789 (10th Cir. 2019).

Here, plaintiffs fail to affirmatively demonstrate commonality as to the proposed class because they have not shown that class members suffered the same injuries from the same defendant. See McCaster, 845 F.3d at 800. Class members who sustained an injury after Central Park Investors sold the property to Central Park Holdings cannot bring a claim against PK Management or Central Park Investors, who have not had any involvement with Central Park Towers since the sale.[1] Therefore proposed class members did not necessarily sustain injuries from the same defendant.

This issue, however, is potentially curable. Rule 23(c)(4) provides that "[w]hen

---

[1] Although plaintiffs do not raise this argument in their motion for class certification, the Court notes that plaintiffs' complaint asserts that the sale of Central Park Towers included assignment of existing lease agreements from Central Park Investors to Central Park Holdings. Second Amended Class Action Complaint (Doc. #204) at 11. Assuming such an assignment would make Central Park Holdings liable to class members for breaching leases which Central Park Investors executed prior to the sale on October 29, 2015, it is questionable whether Central Park Investors might be liable under leases which Central Park Holdings executed after Central Park Investors sold the property.

appropriate, an action may be brought or maintained as a class action with respect to particular issues." This Court has used Rule 23(c)(4) to certify parts of claims where doing so "would materially advance the disposition of the litigation of the whole." Fulghum v. Embarq Corp., No. 07-2602-EFM, 2011 WL 13615, at *2 (D. Kan. Jan. 4, 2011); Emig v. Am. Tobacco Co., Inc., 184 F.R.D. 379, 395 (D. Kan. 1998); see also Law v. Nat'l Collegiate Athletic Ass'n, 167 F.R.D. 178, 184-85 (D. Kan. 1996); In re Motor Fuels, 279 F.R.D. at 609. Here, although plaintiffs' proposed class does not satisfy the commonality requirement of Rule 23(a)(2), creation of two classes under Rule 23(c)(4) might do so. That is, perhaps,

> 1. All persons who resided at Central Park Towers at any time from January 26, 2013 to October 29, 2015 and experienced uninhabitable conditions in the common areas based on Central Park Investors and PK Management's failure to maintain such common areas.
>
> 2. All persons who resided at Central Park Towers at any time from October 29, 2015 to the date of this order and experienced uninhabitable conditions in the common areas based on Central Park Holdings and Aspen Companies Management's failure to maintain such common areas.

### 3.     Rule 23(a)(3): Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims of the representative parties are typical of the claims of the class." Fed. R. Civ. P. 23(a)(3). This element requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members. Falcon, 457 U.S. at 156. The claims of the representative plaintiffs need not be identical, however, to those of the other class members. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010). If the claims of the representative plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. Id.

Here, plaintiffs assert that the claims of the representative plaintiffs are typical of their

fellow class members because "every resident's claim (whether former or current) depends on a showing that Defendants' policy of failing to properly respond to the infestation caused their injuries." Motion To Certify Class (Doc. #240) at 28.

PK Management and Central Park Investors assert that the representative plaintiffs cannot prove typicality because their claims are highly individualized and context-specific, and that plaintiffs fail to produce evidence that their claims and injuries are the same as the class. Aspen Companies Management and Central Park Holdings assert that the representative plaintiffs are not typical because they are extremely non-cooperative tenants, refused pest control treatment, intend to move out of the building and may have been a source of pest problems.

The Court finds that the claims of Riley and Ozburn are perhaps typical of the proposed class, depending on how the class or classes are defined. During the relevant period, Riley and Ozburn have been residents at Central Park Towers, and have alleged that defendants failed to adequately remedy pest infestations and other substandard living conditions. Riley and Ozburn's legal theory is the same as the proposed class. Defendants' focus on Riley and Ozburn's unique factual situations could defeat typicality, but the ultimate nature of the class definition will determine whether those unique factual situations are material. See Alexander v. BF Labs Inc., No. 14-2159-KHV, 2016 WL 5243412, at *7 (D. Kan. Sept. 22, 2016).

### 4. Rule 23(a)(4): Adequacy

The typicality and adequacy of representation requirements of Rule 23(a) tend to merge, but "the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." Dukes, 564 U.S. at 349 n.5 (citing Falcon, 457 U.S. at 157-58 n.13). Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the representative

plaintiffs must show that (1) their interests do not conflict with the interests of other class members and (2) they will prosecute the action vigorously through qualified counsel. See E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002). To defeat class certification a conflict must be "fundamental" and speak to specific issues in controversy. Minor conflicts are not enough. Eatinger v. BP Am. Prod. Co., No. 07-1266-EMF, 2010 WL 3023957, at *4 (D. Kan. Aug. 2, 2010). A fundamental conflict exists where some class members claim to have been harmed by conduct that benefitted other class members. See id. In such situations, the named representative cannot adequately represent the interests of the class because the interests of the named representative are actually or potentially antagonistic to or in conflict with the interests and objectives of other class members. See id.; see also Alexander, 2016 WL 5243412, at *7.

Here, defendants do not dispute that the proposed class counsel will vigorously prosecute the action on behalf of the class. The Court therefore focuses on whether named plaintiffs adequately represent the interests of the proposed class.

Plaintiffs assert that Riley and Ozburn will adequately represent the class because they have a sufficient stake in the litigation and are committed to pursuing their claims.

Aspen Companies Management and Central Park Holdings assert that named plaintiffs cannot adequately represent the interests of the class for many reasons, including that they are behind on rent payments, have refused pest control and the recommendations of pest control contractors and have generally refused to cooperate with pest control measures.[2]

---

[2] PK Management and Central Park Investors do not dispute plaintiffs' claim that Riley and Ozburn will adequately represent the class.

As to Ozburn, Aspen Companies Management and Central Park Holdings assert that she has a conflict of interest because she "may have actually been in a relationship with a pest control provider at the building, receiving off-the-book treatments during the relationship and then causing strains on the building's pest control service when the relationship ended." Defendant Aspen Companies Management, LLC, And Central Park Holdings, LLC's, Response To Plaintiffs' Motion For Class Certification And Memorandum In Support (Doc. #263) filed November 4, 2019 at 19. In addition, Aspen Companies Management and Central Park Holdings assert that Riley and Ozburn may have brought pest-infested furniture into the building and thus are the source of the pests in the building.

The Court finds that Riley and Ozburn probably can adequately represent the proposed class. Although Ozburn's alleged relationship with a pest control provider and Riley and Ozburn's alleged contribution to any pest problem make some parts of their factual situations unique, they do not rise to the level of a fundamental conflict on this record. See Alexander, 2016 WL 5243412, at *7. Riley and Ozburn do not have interests which are antagonistic to or in conflict with the interests or objectives of the proposed class. Again, however, this issue must be considered in light of any class definition which the Court might ultimately approve.

**B.     Rule 23(b)**

In addition to the requirements of Rule 23(a), plaintiffs must affirmatively demonstrate that their proposed class satisfies the requirements of one of the types of class actions listed in Rule 23(b). Here, plaintiffs seek class certification under Rule 23(b)(3). Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

P. 23(b)(3) (emphasis added). In other words, plaintiffs must show that common questions which are subject to generalized, classwide proof predominate over individual questions. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016). An individual question is one for which proposed class members will need to present evidence which varies from member to member; a common question is one for which the same evidence will suffice for each member to make a prima facie showing, or one that is susceptible to generalized classwide proof. Id.; Naylor Farms, 923 F.3d at 789. Plaintiffs must show that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, 136 S. Ct. at 1045 (citations omitted). If at least one central issue is common to the class and predominates, the action may satisfy Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id.

Plaintiffs assert that the central question of whether defendants violated their implied and statutory duties to maintain infestation-free premises predominates over individual questions. Plaintiffs assert that the only individualized proof that will be necessary to determine is the dates each resident lived at Central Park Towers.

Plaintiffs fail to demonstrate that for their proposed class, a common issue predominates under Rule 23(b)(3). Indeed, to determine defendants' liability (if any), the Court would need to inquire extensively into the facts and circumstances of each class member. For example, as to each class member, the Court would need to inquire as to when he or she lived at Central Park Towers, whether his or her specific unit experienced pests or maintenance problems, whether he or she contributed to any pest problem by failing to comply with pest control measures, whether and which pest control providers treated his or her unit – just to name a few plaintiff-specific

issues. No central issue which is common to the entire proposed class predominates and the prevalence of individual questions undermines any value in certifying plaintiffs' proposed class.

Again, however, this problem may be curable. To satisfy the predominance requirement of Rule 23(b)(3), the classes might narrow the claim to the common areas, i.e. a question that could be common to all members of each class. Narrowing the classes in this manner might avoid individualized questions regarding whether each plaintiff experienced pest problems in his or her specific unit and what each defendant did to remedy any such problems. Furthermore, plaintiffs might organize their classes around specific theories of liability and/or types of relief (e.g., damages vs. injunctive relief).

## Conclusion

Plaintiffs' proposed class does not satisfy the requirements of Rule 23(a) and (b). This is not to say that no class could ever be certified. Rather, plaintiffs need to more creatively and thoughtfully address the requirements of Rule 23.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion For Class Certification, Appointment Of Class Representatives And Appointment Of Class Counsel (Doc. #239) filed September 16, 2019 is **OVERRULED**.

Dated this 20th day of December, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
