**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | | |
|---|---|---|---|
| LEORA RILEY, et al., | ) | | |
| Individually and on behalf of all | ) | | |
| others similarly situated, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | Case No. | 2:18-cv-02337-KHV-TJJ |
| | ) | | |
| PK MANAGEMENT, LLC, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

**PLAINTIFFS' MOTION TO JOIN**
**YOUNG MANAGEMENT CORPORATION AS DEFENDANT**

COMES NOW, Plaintiffs, by and through their undersigned counsel, and hereby move for an Order joining Young Management Corporation as a Defendant.

In support of this motion, Plaintiffs respectfully provide the following memorandum in support:

**I.    Procedural and Factual Background**

This putative class action (and putative mass tort[1]) began over two years ago, when Plaintiffs filed class action counterclaims in the District Court of Wyandotte County, Kansas.[2] At the time, Plaintiffs were each tenants of Central Park Towers,[3] and sought to hold the then-current (Aspen Companies Management, LLC ("Aspen") and Central Park Holdings, LLC ("Holdings")) and former property managers (PK Management, LLC ("PK") and Central Park Investors, LLC ("Investors")) accountable for serious habitability concerns arising out of long-

---

[1] As Plaintiffs have conveyed to the Court, they intend to seek leave to join the approximately 80 other tenants at Central Park Towers and proceed to litigate this case as a mass tort.
[2] Doc. 1-1, pp. 12 *et seq.*
[3] Central Park Towers is located at 15 N. 10th Street, Kansas City, Kansas 66102, and is sometimes referred to as "Sunrise Towers."

term infestations of various pests, including bed bugs.[4] In June 2018, Defendants removed this case to this Court.[5] The parties then proceeded to litigate this case as a putative class action.

On September 17, 2019, Plaintiffs filed their *Motion for Class Certification*.[6] While that motion was pending, management of Central Park Towers changed, and Young Management Corporation ("Young") became the new on-site property manager. This change of management became effective on or about October 1, 2019, but was not brought to Plaintiffs, or the Court's, attention for several weeks however. In fact, the first formal notice Plaintiffs' counsel received of the change of management came on October 17, 2019, when Aspen filed its opposition to Plaintiffs' Motion for Protective Order.[7] So as not to disturb (and force a re-start) of briefing on the then-pending *Motion for Class Certification*, and because Young could later be joined and any certified class modified to cover claims against Young, Plaintiffs opted not to seek joinder of Young at that time.

On December 20, 2019, the Court denied Plaintiffs' *Motion for Class Certification* without prejudice.[8]  Per the terms of the prior scheduling orders, this triggered the need to create a Phase II scheduling order and conference.[9] After significant back and forth, the parties ultimately submitted a joint scheduling report for Phase II on January 31, 2020. The parties had not reached agreement on all issues, however, so this joint report included sections specifically including Plaintiffs' proposals which Defendants had not agreed to. The purpose of this inclusion was to advise the Court of Plaintiffs' anticipated trajectory and plan for managing this case should it proceed as a mass tort.

---

[4] Doc. 1-1, pp. 12 *et seq.*
[5] Doc. 1.
[6] Doc. 239.
[7] Doc. 256; *see also* Docs. 261, 268.
[8] Doc. 278.
[9] Doc. 40, p. 11, ¶ 4(d).

On February 11, 2019, the Court conducted Status Conference at which the parties and the Court discussed the Phase II Planning Report. During that Status Conference, there was discussion of whether Young is a necessary party for Plaintiffs' injunctive relief claims. At that time, Plaintiffs took the position that Young, while a permissive party, is not a *necessary* party. After that Status Conference, the Court entered its Preliminary Phase II Scheduling Order, which directed Plaintiffs to file this *Motion to Join Young Management Corporation as Defendant* by March 9, 2020.[10]

## II.   Legal Standard

Whether to order joinder of parties is a matter left to the discretion of the District Court,[11] and is governed by Fed. R. Civ. P. 20.[12] Rule 20 permits joinder of parties as defendants if (1) any right to relief is asserted against the defendants jointly, severally, or in the alternative; (2) that requested relief arises out of the same transaction, occurrence, or series of transactions or occurrences; and (3) any question of law or fact common to the defendants will arise in the action.[13] There is no requirement, however, that the joined defendant be allegedly liable for *all* of the claims.[14] Furhter, "[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20. However, the requirements of Rule 20 should be given liberal interpretation."[15]

Because joining a new party as a defendant also requires amending the complaint, Rule

---

[10] Doc. 283.

[11] *Watson v. Blankinship*, 20 F.3d 383, 389 (10th Cir. 1994).

[12] As noted above, Plaintiffs do not—at this time—believe Young is a necessary party. However, if this Court concludes that Young is a necessary party, then Fed. R. Civ. P. 19(a)(1)(A) would seem to mandate Young's joinder as a defendant.

[13] Fed. R. Civ. P. 20(a)(2).

[14] Fed. R. Civ. P. 20(a)(3).

[15] *Vulcan Society of Westchester County v. Fire Department of City of White Plains*, 82 F.R.D. 379, 387 (S.D.N.Y. 1979).

15 also comes into play.  Rule 15, of course, governs amending the pleadings, and provides that Courts "should freely give leave when justice so requires."[16] The standard for amending under Rule 15(a)(2) has previously been explored in this case.[17] In short, the Court is required to consider four factors: (1) timeliness of the motion to amend; whether there will be prejudice to the non-moving parties; (3) are there repeated failures to cure deficiencies; and (4) would the amendment be futile.[18]

### III.   Argument

#### a.   Compliance with Local Rule 15.1(a).

In accordance with Local Rule 15.1(a)(2), Plaintiffs attach herewith a copy of their proposed amended complaint, which joins Young Management Corporation as a Defendant. **<u>Exhibit A</u>**. For the Court's convenience, Plaintiffs also attach a redlined draft showing the changes as **<u>Exhibit B</u>**.  Because this motion seeks only to join Young Management, Plaintiffs do not change any of the class allegations or the proposed class definition, save for those with respect to Leora Riley which Rule 11 compels Plaintiffs to amend due to her recent eviction.

#### b.   Defendants' positions.

Prior to filing this motion, Plaintiffs asked Defendants' counsel whether their respective clients would be opposing this motion. Aspen and Holdings have declined to indicate whether they will consent to or oppose this motion, instead asking to see a copy of this motion. As of the time of this filing, Plaintiffs have not received any response from PK or from Investors regarding their position on this motion.

---

[16] Fed. R. Civ. P. 15(a)(2). As noted below, not all Defendants have consented.
[17] Docs. 188, p. 2, 201, pp. 2-4.
[18] Doc. 188, p. 2; *Foman v. Davis*, 37 U.S. 178, 182, 83 S.Ct. 227 (1962).

### c.   Joinder of Young is proper pursuant to Fed. R. Civ. P. 20(a)(2).

Plaintiffs seek to join Young as a party under the same legal theories and causes of actions which Plaintiffs have asserted against the other Defendants.[19] Accordingly, and for the time period for which Young has been the property manager, Plaintiffs seek this relief between Young and Holdings jointly and severally (and/or alternatively), satisfying the first requirement of Rule 20(a)(2).

This relief also clearly is derived out of the same transaction, occurrence, and/or series of transactions or occurrences, satisfying the second requirement, in that Plaintiffs allege that the infestation issues have been ongoing for years, spanning the tenure of all Defendants.

Finally, the questions of the extent, nature, cause, and duration of the infestations are clearly common across all defendants.[20] While the Court ultimately denied certification, that decision certainly contemplates at least *some* common questions.[21] With exception of a slight difference of temporality, there is no substantive difference between the allegations against Holdings and Young. That is, Plaintiffs allege that each is and was equally responsible for maintaining the condition of Central Park Towers, and each has failed to do so.

Accordingly, Rule 20 permits the joinder of Young Management Corporation as a Defendant.

---

[19] As Plaintiffs have noted, they also intend to seek leave to amend and intervene, turning this case into a mass tort. Such amendment and intervention may involve adding other, additional claims against Young, along with Aspen and Holdings, based upon issues at the property which have arisen since this case was filed, including HVAC issues, gas issues, flooding issues, and mold issues. These issues will be addressed in Plaintiffs' forthcoming motion to amend and intervene, which will be filed in accordance with the Court's Preliminary Phase II Scheduling Order. Doc. 283.

[20] While Rule 20(a)(2)(B) uses the language "all defendants," Plaintiffs posit that the circumstances of this case qualify, in that Plaintiffs seek this relief as to all defendants from which they can seek the relief.

[21] *See* Doc. 278, pp. 7-8 (discussing use of Rule 23(c)(4) issue classes to resolve commonality issue).

### d. The amendment is proper.

#### i. Plaintiff's request is timely.

The first factor focuses on whether there has been "undue delay."[22] The Tenth Circuit noted that emphasis is required on the adjective "undue" because "Lateness does not of itself justify denial of the amendment."[23] Generally motions to amend are timely if they are made in accordance with the scheduling order.[24] Here, the Preliminary Phase II Scheduling Order expressly grants Plaintiffs leave to file this specific motion, making it clearly timely. Plaintiffs also note that no trial, discovery close, or dispositive motion deadlines are currently in effect in this case. Accordingly, this factor weighs in favor of giving Plaintiffs leave to amend.

#### ii. Defendants would not be unduly prejudiced by the amendment.

In the context of a motion to amend, the prejudice analysis focuses on ability to prepare a response to the amendment.[25] It is also the "most important" of the factors.[26] The party(ies)

---

[22] *Foman*, 371 U.S., at 182.

[23] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). *See also id.* (citing *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3rd Cir. 2004) ("[D]elay alone is an insufficient ground to deny leave to amend. At some point, however, delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." (internal citations and quotation marks omitted))).

[24] *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 512 (D. Kan. 2007) (motion to amend was timely when filed "within the deadline for amending the pleadings set forth in the Court's Scheduling Order.").

[25] *Minter*, at 1208 ("Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'"); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) ("As a general rule, a plaintiff should not be pursued from pursuing a valid claim ..., provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."); *Arena v. Wal-Mart Stores, Inc.*, 221 F.R.D. 569, 572 (D. Kan. 2004) ("... prejudice to the opposing party is the key factor in deciding a motion to amend.").

[26] *Minter*, at 1207; *Jones v. Wildgen*, 349 F.Supp.2d 1358, 1361 (D. Kan. 2004) ("... prejudice to the opposing party is the key factor in deciding a motion to amend.").

opposing the amendment bear the burden of proving prejudice.[27] "Prejudice under Rule 15 means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party,"[28] and generally occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[29] Conversely, where the amendment tracks the factual situations set forth in the original claims, there is no prejudice.[30] Such is the case here.

At the outset, Plaintiffs posit that none of the current Defendants (i.e. the non-movants) have standing to challenge this motion. That is, none of the proposed amendments augment the claims against Defendants. Rather, this motion seeks to join a new party so as to assert claims against that party; claims which are identical to those already asserted against Defendants. Further, the proposed amendment actually *drops* Aspen from the injunctive relief claim, meaning that at least one of the named Defendants would benefit from this proposed amendment. Accordingly, there is no prejudice to Defendants, and this factor weighs in favor of granting leave to amend.

### iii.  There is no repeated failure to cure any deficiency.

The third factor focuses on whether there have been "repeated" failures to cure deficiencies in prior amendments.[31]  This factor only weighs against leave to amend being given when the party seeking leave has previously been given leave to amend so as to cure a defect

---

[27] *Hollis v. Acoustic Sounds, Inc.*, Case No. 13-1083-JWL-JPO, 2013 WL 4768076, at *1-2 (D. Kan. Sept. 4, 2013); *see also Jenkins v. Immedia, Inc.*, Case No. 13-cv-327-CMA-KLM, 2019 WL 1875501, at *8 (D. Colo. Apr. 25, 2019).
[28] *Hollis*, 2013 WL 4768076, at *1.
[29]  *Minter*, at 1208.
[30] *Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994).
[31] *Foman*, 371 U.S., at 182.

and, despite that leave, failed to do so.[32] There have been no amendments since Young Management Corporation became a potential Defendant on or about October 1, 2019.[33] Accordingly, the third factor weighs in favor of granting Plaintiffs leave to amend.

### iv.  The proposed amendment would not be futile.

To decide whether a proposed amendment would be futile, Courts engage in a Rule 12(b)(6)-like analysis.[34] Accordingly, the burden rests upon the party(ies) opposing the amendment,[35] who must establish "beyond a doubt that [Plaintiffs] can prove no set of facts in support of [their] claims which would entitle [them] to relief" or an issue of law must be dispositive.[36] The issue then becomes "not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[37] Plaintiffs' amendment is not futile, and is therefore proper.

Again, Defendants do not have standing to assert a futility challenge, for the proposed amendment does not change any of the claims against them (other than dropping Aspen from the injunctive relief claim). Accordingly, this factor also weighs in favor of giving Plaintiffs leave to amend.

---

[32] *See Stoermann-Snelson v. St. Luke's Health Sys.*, Case No. 07-2214-KHV, 2008 WL 686125, at *4 (D. Kan. Mar. 12, 2008) (denying motion to amend where plaintiff had previously failed to cure defects and where "all facts" were known to plaintiff at the outset of the litigation).

[33] *See generally* <u>Docket</u>.

[34] *Bratcher v. Biomet Orthopedics, LLC*, Case No. 19-cv-4015-SAC-TJJ, 2019 WL 2342976, at *5 (D. Kan. June 3, 2019); *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 504, 507 (D. Kan. 2007); *Hollis*, 2013 WL 4768076, at *2.

[35] *Hollis*, 2013 WL 4768076, at *2.

[36] *Collins*, 245 F.R.D., at 507.

[37] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 239 (1974)); *see also Walker v. Axalta Coating Sys., LLC*, Case No. 14-2105, 2015 WL 685834, at *3 (D. Kan. Feb. 18, 2015) (granting leave to amend as not futile where proposed amendment stated a *potentially* plausible case for punitive damages, while deferring a ruling under Rule 12(b)(6) and Rule 56 until such a motion was made); *Hollis*, 2013 WL 4768076, at *2 (same).

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs' instant motion to join Young Management Corporation as a Defendant should be granted.

Respectfully submitted,

*/s/ Mark W. Schmitz*
Bryce B. Bell          KS#20866
Mark W. Schmitz      KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Court's e-Filing system, and thereby served upon all attorneys of record on March 9, 2020.

*/s/ Mark W. Schmitz*